UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOUGLAS TIMBER OPERATORS, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>KEN SALAZAR,<br>Secretary of Interior,<br><br>    Defendant,<br><br>    and<br><br>PACIFIC RIVERS COUNCIL,<br><br>    Defendant-Intervenor. | Civil Action No. 09-1704 (JDB) |

**MEMORANDUM OPINION**

Plaintiffs are timber companies and trade and workers' associations that support enhanced timber harvest. They challenged in this case the decision of the defendant, Secretary of the Interior Ken Salazar, to withdraw revisions to the management plans for several federal land districts in western Oregon. This Court previously found that the Department of the Interior failed to follow required procedures when it withdrew the revisions, and therefore vacated and remanded the withdrawal, reinstating the revisions. Defendant-Intervenor Pacific Rivers Council ("PRC") has since sued the Secretary to challenge the reinstated revisions in the U.S. District Court for the District of Oregon.

Plaintiffs now move for an order under the All Writs Act, arguing that Interior seeks to frustrate this Court's order with filings in the Oregon case that rely on the vacated and remanded

1

withdrawal. Plaintiffs ask this Court to order the Secretary to withdraw the filings in the Oregon case and to enjoin the Secretary from making similar filings relying on the vacated and remanded withdrawal.

As explained below, plaintiffs' arguments are not persuasive. Interior has been forthcoming in its filings in the Oregon case regarding this Court's decision. Furthermore, although this case bears superficial similarity to cases in which agencies have improperly relied on vacated agency decisions, the Department's litigation position does not constitute agency action improperly relying on the vacated withdrawal. Hence, the Court will deny plaintiffs' motion.

I. Background

Plaintiffs' original claims inhabit a complex legal thicket governing the management of federal lands in Oregon. This Court's opinion of March 31, 2011 explained that framework in some detail. See Douglas Timber Operators, Inc. v. Salazar, 774 F. Supp. 2d 245, 248-250 (D.D.C. 2011). The Court will more concisely summarize only the relevant background here.

The Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-87, governs the use of federal lands, including this land in Oregon, by the Bureau of Land Management ("BLM"). The FLPMA provides that "[t]he Secretary shall . . . develop, maintain, and, when appropriate, revise land use plans," id. § 1712(a), and provides that "[t]he Secretary shall allow an opportunity for public involvement and by regulation shall establish procedures, including public hearings where appropriate, to give Federal, State, and local governments and the public[] adequate notice and opportunity to comment upon and participate in the formulation of plans and programs relating to the management of the public lands," id. § 1712(f). See also 43 C.F.R. § 1610.5.

The northern spotted owl has been listed as a threatened species under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-44. See 50 C.F.R. § 17.11(h). The owl resides, among other places, on the lands at issue in this case. See Douglas Timber, 774 F. Supp. 2d at 248. The ESA imposes procedural requirements on agencies to consult with the Fish and Wildlife Service or the National Marine Fisheries' Service whenever a federal action "may affect" a threatened species. See 50 C.F.R. § 402.14(a).

On December 30, 2008, the Department of Interior issued Records of Decision ("ROD") adopting six revised resource management plans, collectively known as the Western Oregon Plan Revisions ("WOPR"), for 2.5 million acres of BLM lands in western Oregon. Douglas Timber, 774 F. Supp. 2d at 249. The Final Environmental Impact Statement completed prior to adopting the ROD determined that "[t]he revision of resource management plans to allocate lands to various categories of use, with associated management direction for planning future activities on those lands, would have no impact on listed species or critical habitat." Id. Thus, because the impact statement determined that there would be "no effect" on endangered or threatened species, BLM did not initiate an ESA consultation on the WOPR.

Subsequently, the Acting Assistant Secretary of Interior for Land and Minerals Management reversed the WOPR. On July 16, 2009, the Acting Assistant Secretary issued a memorandum to the Acting Director of BLM withdrawing the ROD "[b]ecause BLM's 'no effect' determination was legal error based on the record before me and applicable law." Id. at 249-50. The public was not previously notified of the withdrawal decision and no notice and comment period was provided. Id. at 250.

II. This Court's Summary Judgment Decision

Plaintiffs challenged the July 16, 2009 withdrawal as, among other things, violating the FLPMA's requirement to involve the public in the formulation of land use plans.  See Douglas Timber, 774 F. Supp. 2d at 251.  They argued that the withdrawal was therefore inconsistent with the Administrative Procedures Act, which requires that the Court "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The Department did not dispute that the Secretary did not follow the FLPMA's procedures when he withdrew the ROD.  See Douglas Timber, 774 F. Supp. 2d at 257.  The Department argued, however, that it had "inherent authority" to reconsider and withdraw the ROD since the ROD was based on "legal error."  Id.

After considering the parties' cross-motions for summary judgment, the Court rejected the Department's argument.  The Court concluded that "the Secretary lacked inherent authority to withdraw the 2008 ROD without following the procedures required under the FLPMA, and his decision to do so violated the APA."  Id. at 259.  The Court therefore granted the plaintiffs' motion for summary judgment with respect to the withdrawal of the ROD, vacating and remanding the withdrawal back to the Department.[1]

In so holding, the Court stated that "the legal issue of whether the Secretary's failure to consult under the ESA prior to approving the ROD in December 2008 'was erroneous' is not properly before this Court."  Id. at 258.  Rather, the Court stated that the question before it was "whether the Secretary's decision to withdraw the ROD without formal proceedings under the FLPMA or the APA based on his conclusion of 'legal error' was arbitrary and capricious or in

---

[1] The Court also denied plaintiffs' motion for summary judgment and granted the Department's cross-motion for summary judgment on a claim regarding a Settlement Agreement between four of the plaintiffs in this case and the Department.  See Douglas Timber, 774 F. Supp. 2d at 249, 261.  This claim and the Court's treatment of it are not relevant to the present motion.

4

excess of statutory authority." Id. at 258 n.1.  The Court also noted that "three challenges to the BLM's alleged failure to consult under the ESA were filed in the U.S. District Court for the District of Oregon shortly after the December 2008 approval of the ROD."  Id. (citing Oregon Wild v. Shepard, Civ. No. 3:09–00060 (D. Or. filed Jan. 15, 2009); Pacific Rivers Council v. Shepard, Civ. No. 3:09–00058 (D. Or. filed Jan. 15, 2009); Forest Serv. Emp. for Env't Ethics v. U.S. Fish and Wildlife Serv., Civ. No. 6:09–06019 (D. Or. filed Jan. 22, 2009)).  Finally, the Court noted that "because this Court is remanding the Secretary's withdrawal decision, the future record may shed additional light on the reasoning of the Secretary regarding the Western Oregon Plan Revisions ROD."  Douglas Timber, 774 F. Supp. 2d at 261.

III.  Present Motion

a.  Oregon Case

The Department did not appeal this Court's vacatur and remand of the withdrawal decision.  However, plaintiffs in Pacific Rivers Council v. Shepard, which obviously includes PRC, thereafter renewed their challenge to the now reinstated ROD in the U.S. District Court for the District of Oregon.  See Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 2, Pacific Rivers Council v. Shepard, Civ. No. 3:11-00442 (D. Or. filed Apr. 8, 2011) (filed as Ex. 2 to Def.'s Opp'n to Pls.' All Writs Act Mot. [Docket Entry 63]).

On June 3, 2011, PRC filed a motion for partial summary judgment in the Oregon case. See id.  PRC argued that "BLM failed to comply with section 7 of the Endangered Species Act when it finalized new Resource Management Plans for millions of acres of public lands in western Oregon" without "consult[ing] with the appropriate expert fish and wildlife agencies." Id. at 1-2.  In response, the Department and BLM described this Court's decision requiring vacatur and remand of the withdrawal, stating that "[t]his decision had the legal effect of

reinstating the WOPR RODs as operative decision documents for the lands over which they cover." Federal Defs.' Resp. to Pls.' Mot. for Partial Summ. J. at 2, Pacific Rivers Council v. Shepard, Civ. No. 3:11-00442 (D. Or. filed Apr. 8, 2011) (filed as Ex. 1 to Def.'s Notice of Filing [Docket Entry 58]). Nonetheless, the Department and BLM then stated that they "do not contest liability on Plaintiffs' sole claim for relief" because "as articulated by the Acting Assistant Secretary [in the withdrawal decision], BLM's determination that these decision documents would have 'no effect' on listed species under these specific circumstances was legal error." Id. at 3. The Department filed notice of its filings in the Oregon case with this Court on July 1, 2011. See Notice of Filing [Docket Entry 58].

The Department has more recently indicated that it intends to initiate a "new planning process" for the districts. See Federal Defs.' Reply to Def.-Ints.' Resp. to Pls.' Mot. for Partial Summ. J. at 9, Pacific Rivers Council v. Shepard, Civ. No. 3:11-00442 (D. Or. filed Apr. 8, 2011) (filed as Ex. 1 to Pls.' Reply in Supp. of Mot. for an Order under the All Writs Act and 28 U.S.C. § 2202 ("Pls.' Reply") [Docket Entry 64]). In the meantime, the Department indicates that BLM "has been proposing projects that are in compliance with both [WOPR] and with the prior land management plans (on which ESA consultation was completed)." Def.'s Surreply to Pls.' All Writs Act Mot. ("Def.'s Surreply") [Docket Entry 66] at 3.

b. Plaintiffs' Motion

On July 11, 2011, plaintiffs filed the present motion with this Court for an order under the All Writs Act, 28 U.S.C. § 1651(a). The motion contends that the Department's filing in the Oregon case "seeks nothing less than to circumvent and frustrate this Court's order vacating and remanding the July 16, 2009 withdrawal of the WOPR." Pls.' Mot. for an Order under the All Writs Act ("Pls.' All Writs Mot.") [Docket Entry 59] at 3. Plaintiffs contend that "Interior is

6

trying to accomplish precisely the result that this Court rejected . . . simply by rephrasing the Secretary's unlawful 'withdrawal' announcement . . . as a 'do not contest' response to PRC's claim in Oregon." Id. Plaintiffs argue that the Department's "attempt to circumvent this Court's order relies entirely" on the withdrawal decision, noting that the Department specifically cited the withdrawal decision in its filings in the Oregon case. Id. They also contend that the Department's confession of error in the Oregon case will frustrate this Court's statement that "the future record may shed additional light on the reasoning of the Secretary" regarding the WOPR. Pls.' Reply at 13-14.

Plaintiffs assert that the Department "is continuing to operate under the 1995 resource management plans that the WOPR replaced" since Secretary Salazar "believes ESA consultation is necessary before he can implement the WOPR, [but] he refuses to initiate that consultation." Id. at 3.  Finally, plaintiffs argue that the Department's failure to produce the entire administrative record in the Oregon case shows that the Department "seeks vacatur of the WOPR based solely on his unilateral determination of legal error in the vacated Withdrawal Decision." Id. at 11.

Plaintiffs root their argument in WorldCom, Inc. v. FCC, 246 F.3d 690 (D.C. Cir. 2001). In that case, the court vacated and remanded an FCC decision regarding the classification of certain data-transmittal services because the decision relied on a previous FCC decision that had been vacated for its "defective reasoning." Id. at 692-93, 96. The court noted that the agency "does not seriously contest" that the more recent decision "relied not only on the [prior vacated decision] but also on its defective reasoning." Id. at 696. Plaintiffs also cite a case in which an agency continued to apply regulations that had been adopted on the basis of a biological opinion that the court had vacated. See Ha. Longline Ass'n v. Nat'l Marine Fisheries Serv., 281 F. Supp.

2d 1, 19-20 (D.D.C. 2003). Since "the only articulated basis" for the regulations had been "declared unlawful by the Court," the court ruled that the agency's continued reliance on the regulations was also unlawful. Id. at 26. Finally, plaintiffs cite a D.C. Circuit case in which the court vacated an improperly adopted agency decision that replaced an agency decision that had also been previously vacated as improperly adopted. See Action on Smoking and Health v. Civil Aeronatics Bd., 713 F.2d 795, 797-799, 802 (D.C. Cir. 1983).

IV. Analysis

a. All Writs Act

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. New York Tel. Co., 434 U.S. 159, 172 (1977). "[U]nless confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." Id. at 172-73. The Act has been applied "flexibly." Id. at 173.

b. Application of Law

Contrary to plaintiffs' contention, the Department's filings in the Oregon case do not raise the possibility of frustrating this Court's decision. The Department has been forthcoming in its filings in the Oregon case about this Court's decision. Furthermore, the Department's filings in the Oregon case do not reflect agency action that is improper in the way agency actions were in

the cases cited by plaintiffs. On the contrary, the Secretary indicates that the action BLM is currently taking with respect to the management of land reflects the vacatur of the withdrawal — that is, is in compliance with the ROD.

To be sure, there is some superficial similarity between the Department's action here and the agency conduct in the cases cited by plaintiffs. But the resemblance between this case and those cases is slim. The agencies in WorldCom and Hawaii Longline "relied on" previous decisions that had since been vacated. Here, Interior has cited the vacated withdrawal decision in the Oregon case, therefore likewise arguably "relying on" the withdrawal decision. Nonetheless, the Department's action does not share the objectionable characteristics of the agency conduct in those cases.

When an agency justifies its action on the basis of reasoning that has been judged defective, as the FCC did in WorldCom, that justification is, of course, also improper. This Court, by contrast, has never ruled on the Department's conclusion that the ROD constituted "legal error;" indeed, the Court has never considered the propriety of the ROD in any fashion. Rather, this Court merely held that the agency's withdrawal of the ROD was procedurally improper. Since this Court never ruled on the Department's legal reasoning, the Department's citation to the withdrawal decision as a way of explaining its legal position does not present the same problem as in WorldCom, in which the agency relied on reasoning that had been specifically rejected.

In Hawaii Longline, the agency continued to apply regulations that were adopted on the basis of a vacated biological opinion. It is improper for an agency to take action on the basis of a vacated decision. But here the relevant agency action is BLM's management of land, not the filings that the agency's counsel makes in court. With respect to the management of land, the

9

Department recognizes that the 2008 ROD is the law of the land and states that BLM is only taking action now that is in compliance with the ROD.[2] Court filings do not constitute agency action in the same sense as decisions that the agency is charged by statute to make. That the agency thinks that the ROD is improper and has told the court as much in the Oregon case, citing the withdrawal as explanation, is not the same as making land management decisions on the basis of the withdrawal decision. And nothing in this Court's prior decision precludes the Department from adopting that legal position.

The present situation is also not very similar to Action on Smoking, in which the agency replaced one procedurally deficient decision with another procedurally deficient decision. The Department need not conform to procedural requirements (such as including the public in its decision-making) when filing a brief in court, as it must when taking action under the FLPMA. Hence, the filings in the Oregon case are not procedurally improper as the withdrawal of the ROD was.

The Court would certainly be concerned if the Department were misleading the Oregon court about the nature of this Court's ruling. But the Department accurately characterized this Court's decision in its filings in the Oregon case. Indeed, a magistrate judge's findings and recommendations in the Oregon case showed full awareness of this Court's decision. See Findings & Recommendations on Pls.' Mot. for Partial Summ. J. and Def.-Intervenors' Mot. for Stay at 5, Pacific Rivers Council v. Shepard, Civ. No. 3:11-00442 (D. Or. filed Apr. 8, 2011) (filed as Ex. 1 to Notice of Filing [Docket Entry 67]). As for the production of the administrative

---

[2] Others have apparently filed suit alleging that BLM's land management decisions are not, in fact, in compliance with the WOPR ROD. See Def.'s Surreply at 4 (citing Am. Forest Res. Council v. Salazar, Civ. No. 1:11-01174 (D.D.C. filed June 27, 2011)). The present motion, however, regards only the Department's filings in the Oregon case, not BLM's management of land. The Court is not making any determination about BLM's ongoing land management decisions.

record in the Oregon case, the Oregon court is quite capable of seeking out any portions of the record that it requires in making its decision.

Plaintiffs are correct that the outcome of the Oregon case might prevent the creation of a record that sheds additional light on the Secretary's reasoning for seeking to withdraw the ROD. For example, the court in the Oregon case might strike down the ROD, making unnecessary further elaboration of the Secretary's reasons for the withdrawal of the ROD. But the Oregon court could strike down the ROD regardless of how the Department litigates the case, since the ROD might be struck down on its own merits. In any case, this Court only stated that "the future record <u>may</u> shed additional light on the reasoning of the Secretary." The Court's decision is not frustrated if that possibility does not occur.

V. <u>Conclusion</u>

The Department of the Interior has indicated that its actions with respect to the management of land are in compliance with this Court's decision vacating the ROD's withdrawal. The Department has also been forthcoming with the Oregon court regarding this Court's decision. It is therefore not appropriate for this Court to involve itself in the Department's litigation position in the Oregon case.

Accordingly, for the reasons explained above, plaintiffs' motion for an order under the All Writs Act will be denied. A separate order has been issued on this date.

/s/

JOHN D. BATES
United States District Judge

Dated:  <u>December 23, 2011</u>